1997 SD 52

**Gary G. WOLFF, Petitioner and Appellee,**

v.

**Cathy WEBER, Appellant.**

No. 19735.

Supreme Court of South Dakota.

Considered on Briefs Jan. 16, 1997.

Decided May 7, 1997.

PER CURIAM.

[¶ 1] Cathy Weber, formerly known as Cathy Wolff, appeals from an order correcting the judgment and decree of divorce *nunc pro tunc* due to a "clerical mistake." We reverse and remand with instructions.

## FACTS

[¶ 2] Cathy and Gary Wolff were married October 11, 1975 and divorced October 10, 1990.[1] During their fifteen-year marriage, they had two children: Casey, born April 13, 1979; and Owen, born January 12, 1981. When the parties divorced, Gary was awarded custody of both children. The trial court found the parties' child support obligation to be $394 per month under the guidelines provided by SDCL 25-7-6.2 and ordered Cathy to pay 53 percent of that amount, or $208 per month, less health insurance premiums for the two children. Cathy was also provided a $25 per month deduction for travel expenses and was not held responsible for child support during the six weeks in the summer that she had visitation. She was current with this obligation at all times.

[¶ 3] On March 11, 1996, five and one-half years after the original order of child support was entered, Gary petitioned for modification of child support based on changes in the parties' financial conditions. The petition was referred to a child support referee and a hearing date set. At the hearing, Gary discovered what he believed was an error made in the child support obligation set forth in the judgment and decree. Specifically, Gary alleged that based on the parties' combined net monthly income at that time, the guidelines indicated the amount of child support for two children was to be $613 per month and the $394 ordered by the court reflected support for one child only. Gary requested this error be corrected *nunc pro tunc*.

[¶ 4] Following briefing by the parties, the referee concluded a clerical error had been made in preparing the judgment. The referee characterized the error as not pertaining to an exercise of judicial function but merely "a case of looking at the wrong column in the support schedule." The referee recom-

Michael T. Hogan of Fritz, Hogan & Johnson, Aberdeen, for petitioner and appellee.

Gregg Magera of Siegel, Barnett & Schutz, Aberdeen, for appellant.

---

1. *Appellate counsel did not participate in the* 1990 divorce.

mended correcting the judgment and decree *nunc pro tunc* to reflect that child support for the two children is $613 per month and that Cathy would be held responsible for 53 percent of that amount, or $325 per month. The referee recommended the correction be effective from the date of entry of the judgment and decree of divorce, October 10, 1990, to the date of any subsequent modification of the child support order. According to the referee's calculations, this would result in Cathy's owing $8,190 in back child support for the seventy months from the time of the parties' divorce until March 1996.[2]

[¶ 5] Cathy filed objections to the referee's report and a hearing date was set to hear those objections. Following this hearing, the circuit court accepted the referee's recommendations and entered orders modifying future child support payments based on the parties' changed financial conditions and correcting the original judgment *nunc pro tunc.* Cathy appeals.

## DECISION

[¶ 6] **Does an error in the calculation of child support constitute a "clerical mistake" as defined by SDCL 15-6-60(a) which may be subject to correction *nunc pro tunc?***

[¶ 7] We apply the clearly erroneous standard in reviewing the findings of the referee and circuit court, and give no deference to their conclusions of law. *Whalen v. Whalen,* 490 N.W.2d 276, 280 (S.D.1992).

[¶ 8] SDCL 15-6-60(a) provides:

Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the settled record is transmitted to the clerk of the Supreme Court and thereafter while the appeal is pending may be

so corrected with leave of the Supreme Court.

Courts have the inherent power to correct their records to reflect accurately the judgment of the court, whether the correction is necessitated by clerical errors or inadvertence. *Hawkins v. Kennedy,* 79 S.D. 33, 36, 107 N.W.2d 340, 341 (1961); *Moore v. Connecticut Gen. Life Ins. Co.,* 71 S.D. 512, 517, 26 N.W.2d 691, 693 (1947).

[¶ 9] To define "clerical mistake" we look to the caselaw. Recently, in *In re Estate of Nelson,* 1996 SD 27, ¶ 21, 544 N.W.2d 882, 887, we identified a clerical mistake subject to correction under SDCL 15-6-60(a) as the trial court's failure to include language authorizing independent administration of a decedent's estate where the applicable statute under which the executor petitioned required such language. We remanded the case for a correction of the order, stating the statute's mandatory language provided the trial judge no discretion in deciding whether to appoint an independent administrator. *Id.* Other jurisdictions, applying their own state's version of this rule, have cautioned "it [is] clear that this rule was not designed as a substitute for appeal, nor to affect substantive portions of a judgment or decree." *Spomer v. Spomer,* 580 P.2d 1146, 1148 (Wyo.1978). *See also First Western Bank v. Wickman,* 513 N.W.2d 62, 64 (N.D.1994). The *Spomer* court identified the distinction between judicial and clerical errors:

The key factor is whether or not the court reached a decision in the intentional or purposeful exercise of its judicial function. If the pronouncement reflects a deliberate choice on the part of the court, the act is judicial; errors of this nature are to be cured by appeal.... Clerical mistake refers to the type of error identified with mistakes in transmission, alterations, or omission of a mechanical nature. But the central purpose of Rule 60(a) is to effectuate the contemporaneous intent of the court and to ensure that the judgment reflects that intent.

---

**2.** Our calculations indicate this period of time spans sixty-five months rather than the seventy

found by the referee.

580 P.2d at 1149 (citations omitted). *See also Brooks v. Brooks,* 864 S.W.2d 645, 647 (Tex. App.1993) ("A judicial error is one made by the court in rendering judgment, as opposed to the entering of the judgment in the record.").

[¶ 10] The present case involves application of a statutory mandate in the child support obligation guidelines provided by SDCL 25–7–6.2. *Schwab v. Schwab,* 505 N.W.2d 752, 756 (S.D.1993); *Johnson v. Johnson,* 451 N.W.2d 293 (S.D.1990). The only allowable deviations from these guidelines are those provided by SDCL 25–7–6.10, for which specific findings of fact must be entered. *Id.* The trial court's original record from the order setting child support contains no findings which would support a deviation from the mandatory child support schedule.

[¶ 11] The trial court's findings indicate, at the time the divorce was pending, Cathy was self-employed as hairdresser earning a monthly net income of $1200. Gary, a construction worker, earned approximately $1040 net income per month. Although no specific finding was made as to combined monthly net income, it is apparent the parties' combined monthly net income was $2240. Under the guidelines set forth in SDCL 25–7–6.2, the child support obligation of parties with a monthly net income of $2240 is $394 for one child, and $613 for two children. Clearly, it was error to base Cathy's obligation on the $394 figure. The parties never appealed this decision or brought it to the trial court's attention by motion to amend or clarify the decree.

[¶ 12] "The problem is essentially one of characterization. It must be determined 'whether a substantive change or amendment was made or whether the amended conclusions and judgment were in the nature of corrections.'" *First Western Bank,* 513 N.W.2d at 64 (quoting *Kelley v. Bank Bldg. & Equip. Corp. of America,* 453 F.2d 774, 778 (10th Cir.1972)). We find the error here to be one of judicial function rather than a clerical mistake. Determination of a party's child support obligation requires application of the law to the facts of the case and affects the substantive rights of the parties. Such a process can never be held to be merely clerical. SDCL 15–6–60(a) does not authorize "correction" of a mistake of judicial function.

> [T]he law is that the court cannot amend its judgment to conform to what it now believes it should have done. If further proceedings are necessary in order to provide for support of the children, a motion to modify would be appropriate as, in divorce proceedings, the trial court has continuing jurisdiction with reference to the care of minor children.

*Aabye v. Aabye,* 292 N.W.2d 92, 95 (N.D. 1980) (citations omitted). *See also Thomas v. Thomas,* 189 Mont. 547, 617 P.2d 133 (1980) (asserted mistake or omission in original findings of fact, conclusions of law, and divorce decree, including failure to dispose of home which was main asset of the marriage, was not mere clerical error but judicial error); *Rodela v. Rodela,* 88 Nev. 134, 494 P.2d 277 (1972) (failure of trial court to be aware of the provisions of a marital settlement agreement which it approved did not qualify as a clerical mistake arising from oversight or omission and thus the agreement was not subject to correction *nunc pro tunc* ).

[¶ 13] Cathy's child support obligation was modified as to future payments as a result of Gary's motion. It was error, however, for the trial court to "correct" the original obligation assigned to Cathy in 1990. "The authority of a court to amend its record by a *nunc pro tunc* order is to make it speak the truth, but not to make it speak what it did not speak but ought to have spoken." *Thomas,* 617 P.2d at 135. The court's judgment reflected its intent to set support at $394 as indicated by the court's findings. We reverse and remand with instruction to enter an order consistent with this decision.

## Appellate Attorney's Fees

[¶ 14] Gary has filed a motion for appellate attorney fees in the amount of $931.00, accompanied by an itemized schedule of expenses incurred on appeal as required by *Malcolm v. Malcolm,* 365 N.W.2d 863, 866 (S.D.1985). This Court considers the following factors in deciding whether to award appellate attorney's fees: the property owned by each party; their relative incomes; whether the requesting party's property is in fixed or liquid assets; and whether either

party unreasonably increased the time spent on the case. *Hogie v. Hogie*, 527 N.W.2d 915, 922 (S.D.1995). We decline to award fees under this record.

[¶ 15] MILLER, C.J., and SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., participating.

