1999 SD 130

**Peter B. HENDRICKSEN, Plaintiff and Appellant,**

v.

**Laurie HARRIS, Defendant and Appellee.**

Nos. 20480, 20494.

Supreme Court of South Dakota.

Considered on Briefs Feb. 23, 1999.

Decided Sept. 29, 1999.

John J. Delaney of Delaney & Sumner, L.L.P., Rapid City, South Dakota, Attorneys for plaintiff and appellant.

Mary McCusker, Santa Fe, New Mexico, Attorney for defendant and appellee.

SEVERSON, Circuit Judge.

[¶ 1.] Peter B. Hendricksen (Peter) appeals the circuit court's child support modification order. We affirm in part and reverse in part.

## FACTS

[¶ 2.] On January 11, 1990, Peter and Laurie Harris (Laurie) were granted a decree of divorce by the circuit court of Pennington County. They have continued to battle through several hearings involving child support.

[¶ 3.] Following a trial on a modification request, the circuit court entered amended findings of fact and conclusions of law and an amended order on August 24, 1996. Peter filed a notice of appeal on October 7, 1996. However, on December 23, 1997, on motion from Peter, we remanded to the circuit court to consider changes in circumstances. In the order of remand, we stated, "this remand is dispositive of the appeal before this court" and "subsequent to further proceedings on remand, either party, if feeling aggrieved, may file an appeal, provided however, that such appeal must be timely taken from an order or judgment appealable of right."

[¶ 4.] Following the remand, in February 1997, Peter filed another motion for review of child support, which the circuit court referred to a child support referee. The parties were heard by the referee, who entered his report on May 9, 1997. Objections to the report and findings were timely filed by Laurie, and no objections were filed by Peter.

[¶ 5.] Laurie presented her objections to the referee's report at a hearing before the circuit court on September 2, 1997. The circuit court found an error in the referee's child support calculations, as Peter's net income was erroneously considered as gross income. This decision was not appealed.

[¶ 6.] The referee found as a fact that the oldest child, Heidi, had turned eighteen and was living with her father while completing high school. Based on this finding, the referee's finding and report concluded support to Laurie for Heidi should be terminated and that Laurie should pay Peter support until Heidi graduated from high school. The circuit court modified the referee's report in its order concluding support should continue to be paid to Laurie, since no court order changed custody for Heidi. The circuit court further reversed the referee on another issue, finding both parents' income should be averaged over three years to determine their average income for purposes of child support. Peter appealed from this order and from the 1996 order, which had previously been appealed and remanded.

## STANDARD OF REVIEW

[¶ 7.] We first note our standards of review for the issues presented in this case. It is settled law in this state that a reviewing court reviews findings of fact under the clearly erroneous standard and questions of law are fully reviewable. Mixed questions of law and fact are classified as questions of law and are reviewable de novo. *Permann v. Dept. of Labor Unemp. Ins. D.*, 411 N.W.2d 113 (S.D.1987). A child support referee's report is reviewed under the same standard. *Janke v. Janke*, 467 N.W.2d 494 (S.D.1991). Under this standard, a reviewing court will not overturn findings of fact unless left with a definite and firm conviction that a mistake has been made. *Parsons v. Parsons*, 490 N.W.2d 733, 736 (S.D.1992), (citing *Hilbrands v. Hilbrands*, 429 N.W.2d 750 (S.D.1988)). In this case, the referee was the fact finder and had the advantage of hearing testimony of witnesses and could directly judge their credibility. As a reviewing court, neither the circuit court nor this court should attempt to assume such a role. Conclusions of law made by the referee are fully reviewable and may be overturned by a reviewing court whenever they are found to be incorrect. *Janke*, 467 N.W.2d at 494.

## ANALYSIS AND DECISION

**[¶ 8.] Whether the circuit court erred in not basing support for an adult child still in school on the child's actual residence.**

[¶ 9.] The referee found that Heidi was an adult, was still in school, that she was under the age of nineteen, and she was actually living with her father. Therefore, the referee concluded that no support was due Laurie and support was due Peter until the end of the school year. The circuit court found that there was no formal change in custody for Heidi.[1] Based on this finding, the circuit court did not accept the referee's legal conclusion and provided for support calculated with each parent having Heidi for equal periods.

■■ [¶ 10.] We have stated that a parent seeking a change in child support should not seek a retroactive abatement, but should move the trial court for modification or abatement or for a change in custody. *Agee v. Agee,* 551 N.W.2d 804 (S.D.1996). However, Heidi reached eighteen in November 1997. Peter is not seeking retroactive abatement. Neither party objected to the date set by the referee and the circuit court, April 1, 1998, as the effective date for child support modifica-

tion. At all times relevant to the modification request, Heidi was an adult and her custody was not subject to the judgment and decree of divorce. SDCL 26–1–1; *Earley v. Earley,* 484 N.W.2d 125 (S.D. 1992). She could choose with whom she wished to live. The legislature has provided for payment of support until a child reaches nineteen if the child is a student, but this does not confer authority to determine custody.[2] The referee made a determination of the facts as to where Heidi was living based on the actual circumstances of the parties. We conclude as a matter of law that after a modification petition was filed, support for Heidi after she reached age eighteen, should be based on her actual residence.

**[¶ 11.] Whether the circuit court erred in determining that both parties' income should be averaged over three years.**

■■ [¶ 12.] The referee found as a fact that Peter was self-employed with fluctuating income as a contractor and investor and that Laurie's primary income was a salary from full-time employment with the Rapid City School district and that she had some investment income. In appropriate cases, the Court may determine annualized income for purposes of SDCL 25–7–6.3 [3] by using an average over

1. The circuit court apparently found a formal change of custody order by the circuit court was necessary even with an adult child. The record in this case does not contain any custody order other than the stipulation of the parties incorporated into the final judgment and decree of divorce. The stipulation provided for joint legal custody and stated "the parties agree that they shall likewise share primary physical care, custody and control of the minor children," periods were not specified. The first mention of equal time with the parties was in the referee report dated October 12, 1993, where support was determined using equal time with each of the parties, as that was what the referee found actually reflected the then current arrangement.

2. SDCL 25–5–18.1:

The parents of any child are under a legal duty to support their child in accordance with the provisions of § 25–7–6.1, until the child attains the age of eighteen, or until

the child attains the age of nineteen if he is a full-time student in a secondary school.

3. SDCL 25–7–6.3. Support—Determination of parents' monthly net income—Sources of income.

The monthly net income of each parent shall be determined by his gross income less allowable deductions, as set forth herein. The monthly gross income of each parent includes amounts received from the following sources:
(1) Compensation paid to an employee for personal services, whether salary, wages, commissions, bonus or otherwise designated;
(2) Self-employment income including gain, profit or loss from a business, farm or profession;
(3) Periodic payments from pensions or retirement programs, including social security or veteran's benefits, disability payments or insurance contracts;

a period of years. *Ochs v. Nelson*, 538 N.W.2d 527 (S.D.1995). The referee recommended average income be determined by averaging Peter's income over three years and using Laurie's current income. The circuit court did not accept the referee's recommendation and applied income averaging over three years for both parents. Whether income is best determined by income averaging is a mixed question of fact and law and is reviewed de novo by reviewing courts. The circuit court was not bound by the legal conclusions in the referee's report and did not err in applying the law by averaging the income for both parties.

[¶ 13.] **Whether the circuit court abused its discretion in determining Peter's income and in calculating child support.**

[¶ 14.] Peter raises several additional issues claiming abuse through the inclusion of capital gains in his income and·an extrapolation of income over those set out in the child support schedule. The referee made detailed findings on these issues, and Peter did not object to the referee's report. The circuit court accepted the referee's factual findings on these issues. First, Peter has not shown that the referee and circuit court abused their discretion

> (4) Interest, dividends, rentals, royalties or other gain derived from investment of capital assets;
> (5) Gain or loss from the sale, trade or conversion of capital assets;
> (6) Unemployment insurance benefits; and
> (7) Worker's compensation benefits.
> If the income of the parents is derived from seasonal employment, or received in payments other than regular, recurring payments, such income shall be annualized to determine a monthly average income.

4. SDCL 15–26A–3. Judgments and orders of circuit courts from which appeal may be taken. Appeals to the Supreme Court from the circuit court may be taken as provided in this title from:

> (1) A judgment;
> (2) An order affecting a substantial right, made in any action, when such order in effect determines the action and prevents

and were clearly erroneous. Second, Peter did not object to the referee report, thus he waived his right to appeal those factual issues. Peter apparently is claiming these issues were preserved by his previous appeal, but the order of remand we entered specifically stated it was dispositive of the matter except those appealable of right.[4] This matter is remanded for the circuit court to enter an order consistent with this opinion.

[¶ 15.] MILLER, Chief Justice, and GILBERTSON, Justice, concur.

[¶ 16.] SABERS, and AMUNDSON, Justices, dissent.

[¶ 17.] SEVERSON, Circuit Judge, for KONENKAMP, Justice, disqualified.

SABERS, Justice (dissenting).

[¶ 18.] I would affirm the trial court and award mother appellate attorney fees.

[¶ 19.] The majority opinion appears to make sense if you look at the law abstractly and ignore the facts entirely.

[¶ 20.] Mother's brief claims that the trial court found that:

1) Father had assets valued at $2.5 million dollars.

> a judgment from which an appeal might be taken;
> (3) An order granting a new trial;
> (4) Any final order affecting a substantial right, made in special proceedings, or upon a summary application in an action after judgment;
> (5) An order which grants, refuses, continues, dissolves, or modifies any of the remedies of arrest and bail, claim and delivery, injunction, attachment, garnishment, receivership, or deposit in court;
> (6) Any other intermediate order made before trial, any appeal under this subdivision, however, being not a matter of right but of sound judicial discretion, and to be allowed by the Supreme Court in the manner provided by rules of such court only when the court considers that the ends of justice will be served by determination of the questions involved without awaiting the final determination of the action or proceeding.

2) Father's total income in 1993 was $803,851.

3) Father's taxable income in 1994 was $360,000.

4) Father lived in an upscale neighborhood west of Rapid City, where homes were valued in excess of $250,000. He was extensively remodeling his home and mother lived in a home valued at $75,000.

[¶ 21.] The total contrast in the incomes and standards of living between this millionaire and this teacher make it obvious that the trial court did not abuse its discretion in denying a change in child support simply because the oldest daughter began living with father more than mother. There are still obligations on mother's part for graduation and college preparation expenses.

[¶ 22.] I submit the following factual attachment concerning the amount of child support paid by father:

CHILD SUPPORT HISTORY

| | |
|---|---|
| January 1990 | Divorce granted; Father ordered to pay $575 every month |
| October 1993 | Child support modified; Father ordered to pay $274 every month; physical custody split equally between parents (Father's monthly child support obilgation of $774.41 per month × 6 months — Mother's monthly child support obligation of $227.01 per month × 6 months = $274 per month paid by father) |
| July 1996 | Child support modification; father ordered to pay $2,874 every month (Father's share $6,116.82 – Mother's share $369.93 / 2 = $2,873.44) |
| April 1, 1997 | Current child support modification Trial court ordered: April 1997 – Father pays $2,963 May 1997—Mother pays $293 June 1997 – Father pays $1,913 July, September, November – Mother pays $168 August, October, December – Father pays $1,699 |

So father actually paid:

| | | |
|---|---|---|
| Jan.1990 to Oct. 1993 | —— | approx. 45 months × $575 = $25,875 |
| Oct.1993 to July 1996 | —— | approx. 33 months × $274 = $9,042 |
| July 1996 to April 1997 | —— | approx. 8 months × $2874 = $22,992 |

Total child support paid in 7 years, 3 months = approx. $57,909

Monthly average of $673 per month paid by father

[¶ 23.] I would affirm the trial court in all respects and award mother at least $2,000 in appellate attorney fees.

AMUNDSON, Justice (dissenting).

[¶ 24.] I dissent from the automatic inclusion of the income available from capital gains, which was derived from the sale of an asset awarded to the father as part of the property division in the divorce. Further, a child support increase should not be automatically granted, but is instead based on "the *actual needs and standard of living of the child.*" See *Ochs v. Nelson,* 538 N.W.2d 527, 532 (S.D.1995) (Amundson, J., dissenting) (emphasis in original).

[¶ 25.] The appellant succinctly set forth why capital gains should not be included:

Under the facts of this case, the transaction resulted in no more than a change in form of the asset. Unproductive land valued at approximately $700,000 (Peter's share) was sold and, except for taxes, reinvested in a form that produces tens of thousands of dollars in annual income available for support purposes. Had it been traded in kind, under the IRS rules, there would have been no recognizable gain. In that case there would be no issue at all, even though the holding would have been disposed of in its entirety. Again, treating the sale proceeds, rather than the interest generated from those reinvested proceeds, as income, does nothing more than diminish Peter's property division in favor of Laurie.

[¶ 26.] The record reflects that prior to the sale of the inherited property, father put away money for the children's college education, helped them to purchase vehi-

cles and provided funds to the children over that which had been ordered. Courts should not operate with the mentality of the federal legislature, "if the money is there, spend it." We still require a show-ing of need. In this case, there has been no such showing.