2000 SD 59

**Allan D. MATHIS, Petitioner and Appellant,**

v.

**Beth C. MATHIS, Appellee.**

**No. 21092.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 2000.

Decided May 3, 2000.

Brad P. Gordon of Fuller, Tellinghuisen, Gordon & Percy, Spearfish, Attorneys for petitioner and appellant.

Linda Lea M. Viken of Viken, Viken, Pechota, Leach & Dewell, Rapid City, Attorneys for appellee.

AMUNDSON, Justice.

[¶ 1.] Allan Mathis (Allan) brought a petition for modification of his child support payments payable to his former spouse, Beth Mathis (Beth). The circuit court adopted the child support referee's recommendation that Allan did not provide sufficient information establishing a change in income that would warrant a modification of his child support payments. We affirm.

## FACTS

[¶ 2.] Allan and Beth Mathis were divorced on March 23, 1998. At the time of the divorce, Allan and Beth had six children; two children were over age eighteen and four were still minors. The couple entered a stipulation and agreement (agreement) which was incorporated by reference into the divorce decree. The agreement provided that Allan was obligated to pay $1,226 per month for the care and support of the couples' then four minor children. Also under the agreement, Allan received certain shares of corporate stock. Beth was designated as the physical custodian of the minor children.

[¶ 3.] On March 2, 1999, Allan filed a petition for modification of child support. The basis for his petition was that his income was reduced and one of the children turned eighteen on August 29, 1998, and was graduating from high school. Beth responded to Allan's petition by arguing no change of circumstances exists as it relates to Allan's financial condition and

if any reduction of income did exist, it was voluntary on the part of Allan.

[¶ 4.] The petition for modification was heard by Child Support Referee John Feehan on March 24, 1999. The referee found that no sufficient information existed to establish any change in income which would warrant a change in the previous child support order. In calculating Allan's monthly income, the referee found that Allan had sold various stock holdings beginning on July 9, 1998, and received $50,-756 in proceeds. The referee annualized the entire proceeds amount of $50,756 over a one-year period for a total of $4,229.67 per month and included this amount as part of Allan's monthly income amount of $6,183.33.[1] The referee concluded that, based upon the combined assets and incomes of the parents, Allan's child support obligation should be increased from $1,226 to $1,247 per month for the three remaining minor children.

[¶ 5.] Allan appealed the referee's decision to the Circuit Court, Eighth Judicial Circuit, Lawrence County, South Dakota. After briefs were submitted and oral arguments held on May 25, 1999, the circuit court adopted the referee's recommendation, including the referee's calculations containing the annualization of the proceeds from Allan's stock sale.

[¶ 6.] Allan appeals, raising the following issue:

Whether the trial court erred as a matter of law by adopting the referee's child support order.

## STANDARD OF REVIEW

[¶ 7.] It is well settled that we review a child support referee's "findings of fact under the clearly erroneous standard and questions of law are fully reviewable.Mixed questions of law and fact are classified as questions of law and are reviewable de novo." *Hendricksen v. Harris*, 1999 SD 130, ¶ 7, 600 N.W.2d 180, 181 (citing *Permann v. Department of Labor*,

1. At the time of Allan's divorce, Allan stipulated that his monthly income was $6,667.

*Unemployment Ins. Div.*, 411 N.W.2d 113 (S.D.1987); *Janke v. Janke*, 467 N.W.2d 494 (S.D.1991)). In addition, "[w]hen the circuit court has adopted a child support referee's findings and conclusions, we apply the clearly erroneous standard of review to the findings and give no deference to conclusions of law." *Matter of Loomis*, 1998 SD 113, ¶ 6, 587 N.W.2d 427, 429 (citing *Wolff v. Weber*, 1997 SD 52, ¶ 7, 563 N.W.2d 136, 138 (citing *Whalen v. Whalen*, 490 N.W.2d 276, 280 (S.D.1992)); *Janke*, 467 N.W.2d at 497). Further, "[i]n applying this standard, we will not reverse findings of fact unless we are left with a definite and firm conviction a mistake has been made." *Id.* (citing *Janke*, 467 N.W.2d at 497). We have often noted,

> [t]he referee was the fact finder and had the advantage of hearing testimony of witnesses and could directly judge their credibility. As a reviewing court, neither the circuit court nor this [C]ourt should attempt to assume such a role. Conclusions of law made by the referee are fully reviewable and may be overturned by a reviewing court whenever they are found to be incorrect.

*Hendricksen*, 1999 SD 130, ¶ 7, 600 N.W.2d at 181 (citing *Janke*, 467 N.W.2d at 494).

## DECISION

**[¶ 8.] Whether the trial court erred as a matter of law by adopting the referee's child support order.**

[¶ 9.] The determination of the monthly net income of each parent is addressed in SDCL 25–7–6.3. Under the statute,

> [t]he monthly net income of each parent shall be determined by his gross income less allowable deductions, as set forth herein. The monthly gross income of each parent includes amounts received from the following sources:
>
> (1) Compensation paid to an employee for personal services, whether salary, wages, commissions, bonus or otherwise designated;
>
> (2) Self-employment income including gain, profit or loss from a business, farm or profession;
>
> (3) Periodic payments from pensions or retirement programs, including social security or veteran's benefits, disability payments or insurance contracts;
>
> (4) Interest, dividends, rentals, royalties or other gain derived from investment of capital assets;
>
> (5) Gain or loss from the sale, trade or conversion of capital assets;
>
> (6) Unemployment insurance benefits; and
>
> (7) Worker's compensation benefits.
>
> If the income of the parents is derived from seasonal employment, or received in payments other than regular, recurring payments, such income shall be annualized to determine a monthly average income.

[¶ 10.] In the present case, the referee had a difficult time determining Allan's present income level. This difficulty was based upon Allan's failure to provide a specific income amount; instead, Allan provided several varying income figures. The referee made the following findings in regards to Allan's monthly income:

a. In his petition for modification of child support [Allan] fails to complete the financial statement which requires an estimation of present income from all sources. No income is listed.

b. In his testimony [Allan] submits wages for himself of $1000 per month.

c. In a financial statement [Allan] submitted to his lender dated [February 2, 1998,] [Allan] lists his income as $4975.00 per month. He lists assets of $836,295.00 and liabilities of $261,-413.81. (Note is made that the stock holdings that were liquidated were not specifically listed on this financial statement.)

d. In his 1998 personal income tax return [Allan] lists income as follows:

wages $13,200; interest income $411.00; dividend income $771.00; rental income $7096.00; and capital losses of ($1500.00) for a total income of $19,978. The tax return lists depreciation of $3466.00. Disallowing depreciation, [Allan's] income for his tax return is $23,444.00 or $1953.67 per month.

[¶ 11.] A review of the record reveals that Allan was attempting to play "fast and loose" in his reporting of net income. On several different occasions, Allan would report his income at different amounts depending upon whether the reported amount would benefit him: applying for a loan or getting his child support payments lowered.[2] As we have often stated, "[a] referee, after holding a hearing and listening to witnesses, is in a much better position to find facts than a reviewing court." *Janke*, 467 N.W.2d at 497. *See also Hendricksen*, 1999 SD 130, ¶ 7, 600 N.W.2d at 181 (noting that the referee is the factfinder and has the advantage of hearing the testimony of witnesses and judging their credibility); *In re Schmidt*, 70 S.D. 161, 164, 16 N.W.2d 41, 42 (1944) (holding that a referee's findings are entitled to careful consideration by a reviewing court because "the referee saw and heard witnesses with all advantage that is gained from such personal contact"); *Wood v. Saginaw Gold Mining & Milling Co.*, 20 S.D. 161, 163, 105 N.W. 101, 102 (1905) (noting that the referee "was [a] better ... judge of the weight to be given to the

evidence of respective witnesses" than this reviewing court).

■ [¶ 12.] In this child support modification proceeding, the burden of proof is on Allan to show a "substantial change of circumstances" has occurred which warrants modification. *See* SDCL 25–7A–22 (providing that for any child support order entered after July 1, 1997, "[t]he order may be modified upon showing a substantial change in circumstances if the petition is filed within three years of the date of the order"). This is a more stringent standard than the mere "change in circumstances" standard that was utilized prior to the 1997 South Dakota Legislative amendment to SDCL 25–7A–22. *See* Roger M. Baron, *Cases and Materials on Family Law for the South Dakota Lawyer* 429 (4thEd. 1999). Allan's failure to meet this stringent burden is evident from the varying income amounts that Allan reported. The referee and trial court both sifted through Allan's various financial statements and concluded that there was "no sufficient information [provided by Allan] to establish any change in incomes as a basis to change to previous order of child support." We agree. While the referee might have erred, the record clearly supports the referee's conclusion since Allan submitted inadequate justification for showing a substantial change of income. If Allan wanted a loan, he reported his income high. If Allan wanted to modify his child support obligation, he reported his income low.[3] We cannot condone this type of presentation to support a request to reduce an individual's obligation to pay

---

2. The record contains a copy of the Uniform Residential Loan Application by Allan for the purchase of a $106,875 residence on February 1, 1999. This document states that Allan's income is $4,975 per month, which is well in excess of the $1000 per month that Allan stated in his testimony before the referee. Further, this application provides above Allan's signature that his signature certifies that "the information provided is true and correct."

3. Allan filed his petition for modification of child support, dated February 18, 1999, and stated that "my income have [sic] dropped substantially from the time of my divorce and .needs to be re-evaluated." At the time of hearing, March 24, 1999, Allan told the referee that he earned $1000 per month. Further, at this hearing Allan agreed to provide a copy of the Uniform Residential Loan Application which was later submitted. This document was filled out by Allan on February 1, 1999 and stated that his income was $4,975 per month. This was all evidence which was in front of the referee. If this was not playing fast and loose on the issue of income available, what is?

child support. We have often held that "'[i]f the circuit court reaches the right conclusion for the wrong reason, we will nonetheless affirm.'" *Estate of Perry,* 1998 SD 85, ¶ 29, 582 N.W.2d 29, 35 (quoting *Horne v. Crozier,* 1997 SD 65, ¶ 5, 565 N.W.2d 50, 52 (citing *Kehn v. Hoeksema,* 524 N.W.2d 879, 881 (S.D.1994); *City of Sioux Falls v. Miller,* 492 N.W.2d 116, 118 (S.D.1992) (citations omitted))). Based upon this record, we find that despite trial court's error, it rendered the correct conclusion.

■ [¶ 13.] Beth has requested allowance by this Court of attorney fees in the amount of $1,329.98 for her defense of this appeal. Since we conclude that the referee was not clearly erroneous in finding that no change of circumstances existed which warranted modification of Allan's child support payments, Beth's request for $1,329.98 in attorney fees is granted.

[¶ 14.] We affirm.

[¶ 15.] MILLER, Chief Justice and KONENKAMP and GILBERTSON, Justices, concur.

[¶ 16.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 17.] **The trial court erred in determining child support by including in Allan's income not only the gain from a sale of stock but also the principal or cost basis.**

[¶ 18.] This appeal is limited in scope to the interpretation of SDCL 25–7–6.3(5).[4]

---

4. Allan did not appeal the determination that his 1998 tax return reflected his current income. Therefore, the conference opinion's discussion of his playing "fast and loose" is of little relevance. The referee found that a substantial change of circumstances existed effective June 1, 1999, the date the oldest child graduated from high school. Thus, Allan's child support obligation was modifiable and the conference opinion's discussion regarding his "failure to meet this stringent burden" is also unnecessary.

Some of the confusion surrounding Allan's financial status is attributable to the fact that he solely owns a restaurant in Sundance, Wyoming and is paid $1,000 per

Statutory interpretation is a question of law, which is reviewed de novo. *In re Estate of Klauzer,* 2000 SD 7, ¶ 22, 604 N.W.2d 474, 479 (citations omitted).

> The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed.

*Beck v. Lapsley,* 1999 SD 49, ¶ 3, 593 N.W.2d 410, 412 (citations omitted).

[¶ 19.] Generally, *all* income available to both parties should be considered as income when calculating income for child support purposes. *Peterson v. Peterson,* 2000 SD 58, ¶ 26, 610 N.W.2d 69. However, SDCL 25–7–6.3 specifically controls this issue:

> The monthly net income of each parent shall be determined by his gross income less allowable deductions, as set forth herein. The monthly gross income of each parent includes amounts received from the following sources:

month, which amount is deducted from corporate income as an expense. Likewise, Beth Mathis solely owns a restaurant in Spearfish, South Dakota and claims she is paid $500 per month.

Beth argues that any reduction in Allan's income is due to his own voluntary act. In justifying the change in the operation of his restaurant, Allan testified that he has experienced management and personnel problems; for example, he fired his restaurant manager, who is now employed by Beth. In considering deviations from the guidelines, the referee found "[t]here is no recommendation for any deviation at this time."

(5) Gain or loss from the sale, trade or conversion of capital assets. . . .

[¶ 20.] The language of this statute is "clear, certain and unambiguous." The term "gain" is commonly defined as "[a]ppreciation in value or worth of securities or property." Black's Law Dictionary 678 (6th ed.1990). More specifically, a "gain derived from capital" is defined as "a gain, profit or something of exchangeable value proceeding from the property, *severed from the capital* however invested. . . ." *Id.* (emphasis added). Clearly, the legislature intended to exclude the cost basis, the amount paid for the stock, from income because only the gain or loss is designated as income. We assume statutes mean what they say and that the legislators have said what they meant.

[¶ 21.] In her appellate brief, Beth cites to numerous cases to support her argument that all monies received from the sale of stock are included as income, regardless of the cost. Her cases include receipt of monies from: (1) the sale of farm machinery, (2) insurance proceeds, (3) an inheritance, (4) a trust fund, and (5) a worker's compensation award. Even if we were to agree with the inclusion of these receipts of monies as income for child support purposes, it is immaterial here. The South Dakota Legislature specifically and unequivocally provided that only the *"gain* . . . from the sale, trade or conversion of capital assets" is considered as income.[5]

[¶ 22.] Here, the referee calculated Allan's monthly gross income by using his 1998 income tax return, which reflected a monthly income of $1,953.67 after disallowance of depreciation. The referee included as income Allan's sale of stock, which Allan previously received as part of the property division in the divorce, amounting to $50,756 and averaging $4,229.67 per month.

The referee combined $1,953.67 and $4,229.67 to conclude that Allan's monthly income was $6,183.33. Based upon this figure, the referee *increased* Allan's monthly child support obligation from $1,226 for *four* children to $1,247 per month for *three* children. This was error.

[¶ 23.] Obviously, the referee and the trial court failed to deduct the cost basis of Allan's stock per SDCL 25–7–6.3(5). Schedule D of Allan's 1998 income tax return reflects that Allan sold stock for $50,756 with a cost basis of $43,422 resulting in a long-term capital gain of $7,334. The return also reflects that Allan had a short-term loss of $1,492 when he sold his Intel stock. Thus, the total capital gain realized by Allan in 1998 was $5,842. This amount, $5,842, not $50,756, should be included in Allan's income for child support purposes pursuant to the "clear, certain and unambiguous" language of SDCL 25–7–6.3(5). Therefore, the referee and the trial court erred as a matter of law in determining that the entire $50,756 was included as income.

[¶ 24.] Implicitly conceding error, Beth argues alternatively that the $50,756 is included as income to Allan under SDCL 25–7–6.5:

If a child's needs are not being met through the income of the parents, assets shall be considered. If the parents have savings, life insurance or other assets in amounts unrelated to income, these holdings shall be considered. The parents' ability to borrow may be used to determine financial ability.

The referee noted that "[t]his is also a case where the assets of the Petitioner Father should be considered if any claims of inadequate cash flow are considered." However, reliance on this statute is premature and wrong. First, there has been no determination that the needs of the child

---

5. In fact, Beth cites to a Tennessee case that supports this conclusion. In *Smith v. Smith,* 1999 WL 548568, the Tennessee Court of Appeals noted that it previously remanded the case and had instructed the trial court to "consider [obligor's] 1995 *capital gains* as well as his commissions, bonuses and salary." After the capital gains were considered, the child support obligor appealed, but the *Smith* court affirmed.

"are not being met through the income of the parents." Second, SDCL 25–7–6.3(5) excludes the cost basis of stock as income. While other assets may be considered under SDCL 25–7–6.5, those amounts specifically excluded as income may not be included.

[¶ 25.] While I dislike the manner in which Allan presented his financial situation to the referee, that conduct does not justify an affirmance of an error of law. I vote to reverse the trial court's erroneous inclusion of the cost basis of the stock as part of Allan's income and remand for a correct determination of his income and child support obligation.