#24301-rev & rem-JKK

**2007 SD 64**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LANA E. DAHL,                          Plaintiff and Appellant,

v.

WADE A. DAHL,                          Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JAMES W. ANDERSON
Judge

\* \* \* \*

AL ARENDT                              Attorney for plaintiff
Pierre, South Dakota                   and appellant.

MARK A. MORENO of
Schmidt, Schroyer, Moreno,
  Lee & Bachand, P.C.                  Attorneys for defendant
Pierre, South Dakota                   and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 23, 2007

OPINION FILED **06/27/07**

#24301

KONENKAMP, Justice

[¶1.]     In this child support action, a parent contends that the child support referee and circuit court erred in denying her motion for modification.  We reverse and remand.

## Background

[¶2.]     Lana E. Dahl and Wade A. Dahl were married in 1983.  They had two children during the marriage:  a son, born June 8, 1988, and a daughter, born August 1, 1990.  Lana sued Wade for divorce.  In resolving their differences, the parties entered into a Property Settlement Agreement (Agreement), dated July 26, 2004.  Each was represented by counsel.  A judgment and decree of divorce incorporated the Agreement.

[¶3.]     The Agreement divided the parties' property and debts.  Each agreed not to seek spousal support from the other.  Lana received primary physical custody of their daughter, and Wade received primary physical custody of their son.  They would "share joint legal custody of their minor children."  In addressing child support, the parties entered into an arrangement that would later give rise to the present dispute:  "In recognition of the parties' mutual obligations for child support, and their respective incomes, the parties shall not pay any child support owed by one to the other."  The Agreement recited that each "does release absolutely and forever all right and claim of alimony, support, medical payments, maintenance or otherwise in consideration of the cash obligations and transfer of property as herein above set forth."  They also agreed that each "shall not make application for payment of alimony, medical payments or other periodic payments."

[¶4.]        In May 2006, their son graduated from high school and in June turned eighteen.  Shortly afterwards, Lana petitioned for modification of the parties' child support obligations.  She requested that Wade be ordered to pay support for their daughter.  The matter was heard by a child support referee, with both parties appearing telephonically.  Lana asserted that a change in circumstances existed because their son turned eighteen and graduated from high school.  She contended that the Agreement only relieved each parent of their obligation to pay child support to the other based on the parties' "mutual obligation of support" for their minor children.  Because Wade no longer had a support obligation for their son, Lana argued that there was no "mutual obligation of support."

[¶5.]        Wade responded that the issue of child support was settled with the executed Agreement.  When they agreed not to seek support from each other, they were both fully aware that their son would turn eighteen three years before their daughter.  Moreover, according to Wade, he "gave up legitimate property and support interests in exchange for [Lana's] right to seek support in the future for [their daughter], and . . . since [she] could financially support [their daughter], [Lana] should be required to live up to her end of the Agreement."

[¶6.]        The Referee noted that the parties were represented by "competent counsel" when they executed their Agreement.  He found that the language of the Agreement "does appear to take into account the argument and perception that the parties were making a settlement that called for no support to be paid now or in the future."  Further, he observed that the Agreement stated that the parties gave up

the right to seek "payment of alimony, support, medical payments or otherwise," in consideration of the property transfers and cash obligations.

[¶7.] The Referee also took into consideration the policy reasons why child support agreements are always subject to modification. He concluded, however, that the policy concerns were not present here because Lana had sufficient income to support their daughter and in light of the language of the parties' Agreement. Moreover, the Referee recognized that Lana was aware that their daughter would be fifteen when their son turned eighteen and "could have easily" included language in the Agreement that "it was her intent to come back and seek support for" their daughter. Based on the language of the Agreement and the current financial circumstances of the parties, the Referee denied Lana's request for modification of child support.

[¶8.] Lana filed an objection to the Referee's report in circuit court. A hearing was held, and the court upheld the Referee's report and recommendation. Lana now appeals to this Court, arguing that the circuit court erred when it (1) failed to issue findings of fact and conclusions of law; and (2) affirmed the Referee's decision not to award child support.

## Standard of Review

[¶9.] Findings of fact of a child support referee are reviewed under the clearly erroneous standard of review. Mathis v. Mathis, 2000 SD 59, ¶7, 609 NW2d 773, 774 (quoting Hendricksen v. Harris, 1999 SD 130, ¶7, 600 NW2d 180, 181 (citing Permann v. Dept. of Labor, Unemployment Ins. Div., 411 NW2d 113, 116 (SD 1987); Janke v. Janke, 467 NW2d 494, 496-97 (SD 1991))). Questions of law,

however, are reviewed de novo. *Id.* (citations omitted). "When the circuit court has adopted a child support referee's findings and conclusions, we apply the clearly erroneous standard of review to the findings and give no deference to conclusions of law." *In re* Loomis, 1998 SD 113, ¶6, 587 NW2d 427, 429 (citing Wolff v. Weber, 1997 SD 52, ¶7, 563 NW2d 136, 138 (citing Whalen v. Whalen, 490 NW2d 276, 280 (SD 1992)); *Janke*, 467 NW2d at 497)).

## Analysis and Decision

### 1. Findings of Fact and Conclusions of Law

[¶10.] Lana first contends that the circuit court was required to issue findings of fact and conclusions of law in support of its decision to affirm the Referee's report and recommended order. According to Lana, because the Referee's report does not contain anything "denominated as findings or conclusions," the circuit court was required, under SDCL 15-6-52(a), to issue findings and conclusions.

[¶11.] Although the Referee's report does not contain sections entitled "Findings of Fact" and "Conclusions of Law," a review of the report reveals that the Referee made factual findings and legal conclusions. The report discusses the claims of the parties, the pertinent background information, the issues presented, and the arguments made. Thereafter, the report states that the Referee considered the terms of the Agreement, possible policy concerns, and the parties' circumstances. Also, the report contains the Referee's legal ruling based on the findings. In sum, the report contains findings of fact and conclusions of law, even if it did not entitle them so.

[¶12.] Clearly, SDCL 25-7A-22 permits a court to "adopt" a referee's report after holding a hearing on and reviewing a party's objection to the report. "The findings of a referee, to the extent that the court adopts them, shall be considered as the findings of the court." SDCL 15-6-52(a). Circuit courts are not required to issue separate findings of fact and conclusions of law after adopting a referee's report. Because the report here contains factual findings and legal conclusions, it was not error for the court to adopt the Referee's report and recommended order without issuing separate findings and conclusions.

### 2. Mutual Agreement to Seek No Support

[¶13.] From Lana's perspective, the Referee's report, adopted by the court, forecloses her from any future child support modifications. She argues that the court had the authority to modify the Agreement and was required to establish Wade's obligation to pay support for their daughter. She also contests the rationale used by the Referee in which he denied her request for modification because she makes enough money to pay for her daughter's support herself. She also challenges the Referee's conclusion that support is not warranted because Wade gave up property and support interests in making the Agreement.

[¶14.] Wade did not dispute that the son's change in status was a substantial change in circumstances.[*] SDCL 25-7A-22(1). He contends, however, that Lana

---

[*] Because the petition to modify support was filed within three years of the date of the support order, a showing of substantial change in circumstances was required. SDCL 25-7A-22(1). Both the circuit court and the referee agreed that there was a substantial change in circumstances here, which can, but does not require a modification. *See, e.g., Mathis*, 2000 SD 59, ¶12, 609

(continued . . .)

still had the burden of showing that a modification was called for under the circumstances, a burden she did not meet. Wade relies on the language of the parties' Agreement. Its terms, Wade asserts, clearly express the parties' intent that each parent would not seek child support for the child in his or her primary care. He believes there is no violation here of public policy by enforcing the terms of the Agreement, as the Agreement is always subject to future modification if called for under the circumstances.

[¶15.] In our analysis, we start with the proposition that parents have a statutory duty to support their children. *Vander Woude v. Vander Woude*, 501 NW2d 361, 363 (SD 1993) (citing SDCL 25-5-18.1; SDCL 25-7-6.1); *see also* Kost v. Kost, 515 NW2d 209, 214 (SD 1994). Circuit courts retain jurisdiction to modify a divorce agreement as it relates to the "custody, care, and education of the children of the marriage as may seem necessary or proper[.]" SDCL 25-4-45; Thomas v. Hauge, 2002 SD 12, ¶¶9-10, 639 NW2d 520, 522-23 (per curiam); *see also* Jacobson v. Jacobson, 2000 SD 60, ¶12, 611 NW2d 210, 213-14 (citing Jameson v. Jameson (*Jameson II*), 306 NW2d 240, 242 (SD 1981); State *ex rel*. Larsgaard v. Larsgaard, 298 NW2d 381, 383 (SD 1980)).

[¶16.] While the original Agreement provided that neither parent would pay support to the other, this Agreement was expressly premised on a "mutual obligation of support." Wade no longer has an obligation to support their son, a

_____

(. . . continued)
NW2d at 776-77; *contra* McKittrick v. McKittrick, 2007 SD 44, ¶7, --- NW2d ----.

condition which, as Wade agreed, constitutes a substantial change in circumstances under SDCL 25-7A-22(1). Wade acknowledges that he has a statutory obligation to support his daughter. *See* SDCL 25-5-18.1; SDCL 25-7-6.1. Nonetheless, Wade argues that he should not be required to pay support for their daughter because the Agreement was intended to waive current and future child support, because he gave up property interests in consideration for this understanding, because Lana earns considerably more money than he does and thus she has an independent ability to adequately support their daughter, and because the change in circumstances here is insufficient to justify modifying child support.

[¶17.] It is immaterial that Wade claims to have given up property interests in consideration for not having to pay support for his daughter. Courts having considered this question conclude that parents cannot contract away obligations for future child support. *See* Reimer v. Reimer, 502 NW2d 231, 233 (ND 1993) (agreement relinquishing property rights in lieu of having to pay support was invalid); Kelley v. Kelley, 449 SE2d 55, 56 (VA 1994) (agreement declared null and void where husband relinquished all his interest in the marital home in return for not having to pay child support). Furthermore, because both parents have an obligation to support their children, Lana's independent financial means will not relieve Wade of his support obligations. By statute, child support is based on *both* parent's income levels and requires that both parents provide support within their means. SDCL 25-7-6.1; *see* Billion v. Billion, 1996 SD 101, ¶41, 553 NW2d 226, 235.

[¶18.] As we stated in *Thomas*,

> [T]he father may not by contract avoid his duty to support and educate his minor children, and a wife cannot contract away the

> right of children to be supported by their father. An agreement between the father and mother which attempts to relieve the father of his obligation is, as between the father and children, ineffective as a violation of public policy; and where the father and mother are equally and jointly charged by statute for the maintenance of their children, an agreement by the mother to perform her statutory duty does not discharge the father's statutory obligation.

2002 SD 12, ¶8, 639 NW2d at 522 (citation omitted); Estes v. Albers, 504 NW2d 607, 609 (SD 1993); *see also* Knorr v. Knorr, 588 A2d 503, 505 (PA 1991) (parents' "right to bargain for themselves is their own business"; however, "[t]hey cannot in that process set a standard that will leave their children short"). Although a stipulation may be valid and fair when executed, it may not be later when circumstances change.

[¶19.]     Wade argues, in the alternative, that if the support order is to be modified, he requests an equitable offset for the value of the property interests and support he gave up as part of the Agreement. He relies on several North Dakota Supreme Court cases, which have held that "as a matter of equity, a divorcing parent attempting to satisfy [their] child support obligation by foregoing a rightful share of the marital property [are] entitled to offset the amount of marital property given up against [their] child support obligation." *See* Hewson v. Hewson, 708 NW2d 889, 893-94 (ND 2006) (citing Rueckert v. Rueckert, 499 NW2d 863, 870-71 (ND 1993)); *Reimer*, 502 NW2d at 233-34.

[¶20.]     Even if we were to adopt North Dakota law on this point, a decision we need not reach today, there is nothing sufficiently detailed in the language of the Agreement that indicates Wade was fulfilling his future obligation to support his daughter by giving up certain property and support interests. The provisions of the

Agreement that Wade interprets to allow an equitable offset are not specific to him. Rather, both Wade and Lana agreed that they released the other against any "claim for alimony, support, medical payments, maintenance or otherwise in consideration of the cash obligations and transfers of property as hereinabove set forth." They also agreed that each "shall not make application for payment of alimony, medical payments, or other periodic payments." Absent any specific financial details, this language fails to confirm that Wade actually gave up some interest he would have otherwise received in exchange for a release of his child support obligation.

[¶21.] Under the circumstances of this case, we conclude that excusing Wade of his statutory obligation for child support is not in his daughter's best interests. The circuit court erred when it adopted the Referee's report denying modification of child support. We reverse and remand for reconsideration based on the child support guidelines.

[¶22.] Reversed and remanded.

[¶23.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.