#25900-a-SLZ

**2011 S.D. 78**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LINDA K. (MEYERINK) LINGE,            Plaintiff and Appellant,

    v.

STEVEN J. MEYERINK,            Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE WILLIAM J. SRSTKA, JR.
Judge

\* \* \* \*

KENNETH M. TSCHETTER of
Tschetter & Adams Law Office, PC
Sioux Falls, South Dakota            Attorneys for plaintiff
                                          and appellant.

ROBERT L. SPEARS
Watertown, South Dakota            Attorney for defendant
                                          and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
OCTOBER 3, 2011

OPINION FILED   **11/22/11**

ZINTER, Justice

[¶1.] Linda Linge appeals from an order reducing Steven Meyerink's child support obligation. Linge argues that the referee and circuit court abused their discretion in allowing Meyerink a deviation from the child support guidelines based on his financial condition. Linge acknowledges that Meyerink's poor financial condition was caused by his wife's serious medical problems. But Linge argues that Meyerink's obligation to his children takes priority. Under the facts of this case, we affirm.

*Facts and Procedural History*

[¶2.] Linge and Meyerink married in 1989. When the parties divorced in 2000, Linge retained custody of their two children. Meyerink's initial child support obligation was $674.94 per month. His obligation was reduced to $515 in July 2001. Meyerink's obligation stayed at $515 since that time, and he remained current.

[¶3.] Linge sought modification of Meyerink's obligation in February 2010. A child support referee heard testimony from the parties. Meyerink testified that his wife suffers from a severe condition that affects her immune system. This condition left her unable to work, and she currently receives Social Security disability benefits. The unreimbursed medical bills associated with the condition are substantial. They have caused Meyerink to incur a significant and continuing accumulation of debt.

[¶4.] Meyerink requested a deviation from the child support guidelines because of his financial condition caused by his wife's medical expenses. Meyerink's insurance covers most of the expenses. But the amount not covered by insurance

has forced Meyerink to avoid foreclosure by consulting a debt consolidation company, refinancing his house (interest-only mortgage) and pickup, obtaining unsecured signature loans, and incurring more than $10,000 in credit card debt.

[¶5.] Based on Meyerink's financial condition, the referee allowed a $300 per month downward deviation from the scheduled support obligation. (The worksheet attached to the referee's report shows that Meyerink's obligation would have been $748.55 without the $300 deviation.) *See* SDCL 25-7-6.2. The referee recommended a new obligation of $449 per month, $66 less than his monthly obligation before Linge petitioned for the modification. The referee's recommendation was partially based on a finding that Meyerink had accumulated $60,000 in credit card debt as a result of the medical expenses.

[¶6.] Linge objected to the referee's report, and the circuit court heard the objections. The court found that the referee had miscalculated the amount of Meyerink's credit card debt. The matter was remanded to the referee for further consideration of Meyerink's financial condition.

[¶7.] On remand, Meyerink testified that although he did not have $60,000 in credit card debt, his total debt, accumulated since his wife began incurring medical expenses, was roughly $60,000. The referee issued a report again recommending a $300 per month deviation. The circuit court adopted the referee's recommendation.

*Decision*

[¶8.] This Court reviews the decision to grant or deny child support under the abuse of discretion standard. *Miller v. Jacobsen*, 2006 S.D. 33, ¶ 18, 714 N.W.2d

69, 76 (citing *Midzak v. Midzak*, 2005 S.D. 58, ¶ 17, 697 N.W.2d 733, 738 (additional citations omitted)). A child support referee's findings of fact are reviewed for clear error, while conclusions of law are reviewed de novo. *Wagner v. Wagner*, 2006 S.D. 31, ¶ 5, 712 N.W.2d 653, 656 (citing *Mathis v. Mathis*, 2000 S.D. 59, ¶ 7, 609 N.W.2d 773, 774). "In addition, when the circuit court has adopted a child support referee's findings and conclusions, we apply the clearly erroneous standard of review to the findings and give no deference to conclusions of law." *Id.* Findings of fact are not reversed for clear error "unless we are left with a definite and firm conviction a mistake has been made." *Id.*

[¶9.] SDCL 25-7-6.10(2) allows a deviation from the child-support guidelines based on "[a]ny financial condition of either parent which would make application of the schedule inequitable." *Id.* The referee ruled that Meyerink's poor financial condition justified application of this deviation.

[¶10.] Linge sets forth her version of Meyerink's monthly income and expenses. Linge argues that when Meyerink's income is combined with his wife's disability income, there is enough money left to pay the scheduled child support obligation without a deviation. But Linge's income calculations are based on Meyerink's gross income, giving no consideration to the deductions allowed by SDCL 25-7-6.7 to determine the child support obligation. Linge's view of Meyerink's financial condition also fails to consider all of his medical expenses. Meyerink testified that treatment for his wife's condition requires a great deal of expense for out-of-town travel to California. Meyerink also testified that although his monthly payment to the local hospital is only $50 per month, his wife incurs

unreimbursed expenses at that hospital of roughly $500 per month. Thus, he is accumulating an additional $450 in medical debt each month. Meyerink's financial condition is not that suggested by Linge.

[¶11.] Linge, however, stresses that to this point Meyerink has not defaulted on any debt, and he has been able to meet his child support and other financial obligations. Linge argues that because Meyerink remains solvent, a deviation should not be available. But SDCL 25-7-6.10(2) is not limited to obligors who are insolvent. Meyerink has met his obligations, but only by using a debt consolidating company, securing an interest-only mortgage on his home, refinancing his pickup using its maximum value, obtaining unsecured loans, and negotiating to pay medical providers a monthly amount that does not keep pace with the debt that is accumulating. Meyerink's deviation is supported by findings that are not clearly erroneous.

[¶12.] Linge also advances a number of arguments that application of the deviation was an abuse of discretion. Linge argues that the presumption of financial hardship found in SDCL 25-7-6.10(2) does not apply. That statutory presumption provides:

> Deviation from the schedule in § 25-7-6.2 shall be considered if raised by either party and made only upon the entry of specific findings based upon any of the following factors: . . . (2) Any financial condition of either parent which would make application of the schedule inequitable. If the total amount of the child support obligation, including any adjustments for health insurance and child care costs, exceeds fifty percent of the obligor's monthly net income, it is presumed that the amount of the obligation imposes a financial hardship on the obligor. This presumption may be rebutted based upon other factors set forth in this section[.]

But neither the referee nor the circuit court applied that presumption in this case.

[¶13.]    Linge argues that a deviation  lowering Meyerink's pre-existing child support obligation "defies logic" because Meyerink has been meeting his prior, higher monthly obligation.  Linge relies on *Hollinsworth v. Hollinsworth*, 2008 S.D. 102, ¶ 21, 757 N.W.2d 422, 429.  But *Hollinsworth* concerned SDCL 25-7-6.10(6), a statute involving "the voluntary and unreasonable act of a parent which causes the parent to be unemployed or underemployed."  There is no contention that Meyerink voluntarily and unreasonably became unemployed or underemployed.  *Hollinsworth* is inapposite.

[¶14.]    Linge argues that allowing the same deviation after the remand to correct the credit card error was arbitrary and unreasonable.  Although the amount of Meyerink's credit card debt changed, the total amount of debt did not substantially change.  The referee's reevaluation of Meyerink's financial condition on remand was not arbitrary and unreasonable.

[¶15.]    Linge argues that the circuit court erred in failing to enter specific findings and conclusions supporting the deviation.  The circuit court, however, adopted the referee's findings and conclusions.  A circuit court may adopt the findings of the referee.  *Wagner*, 2006 S.D. 31, 712 N.W.2d 653.

[¶16.]    Linge finally argues that a downward deviation violates public policy. Linge relies on *Donohue v. Getman*, 432 N.W.2d 281 (S.D. 1988).  In *Donohue*, this Court analyzed SDCL 25-7-7 (1988), which authorized deviations only on specific, enumerated factors, one of which was "the financial condition of the parents."  *Id.* at 282.  That statute was repealed in 1989.  SDCL 25-7-6.10 was the replacement

statute, and subsection (2) of that statute now allows a deviation based on "*[a]ny* financial condition of *either* parent which would make application of the schedule inequitable." *Id.* (emphasis added). This new language was specifically intended to allow a deviation based on the "general financial condition of either parent." *South Dakota Child Support Commission* December 1988 Report, at 13. The Commission acknowledged the broad general nature of the deviation and its application to unspecified financial conditions not specifically enumerated.

> Although the Commission has concerns about the potential abuse of such language, the Commission believes that there may be other financial conditions which would make the application of the guideline schedule inequitable. The Commission anticipates that there will be a high burden on the party seeking to utilize this deviation and that the deviation will not be used indiscriminately so as to destroy the purpose of the guidelines.

*Id.*

[¶17.] We acknowledge that we have often stated "a parent's responsibility to support his children is paramount[.]" *Donohue*, 432 N.W.2d at 283. This rule has not changed since the repeal of SDCL 25-7-7. *See, e.g.*, *Kost v. Kost*, 515 N.W.2d 209, 214 (S.D. 1994).[1] But *Donohue* and Linge's other primary authorities involved deviations due to the costs of supporting obligors' stepchildren in second families. The 1988 Child Support Commission indicated that in second family children cases the child support obligor enters the new family or new marriage relationship knowing of his or her prior child support obligation.

---

1. *Kost* involved an obligor's financial condition caused by a discretionary decision of the obligor to forego employment to attend a technical school. 515 N.W.2d at 214. It has no application to this case involving a fully employed obligor who has encountered an involuntary change in financial condition.

> Much time was consumed by the Commission in discussing the issue of step-children and second family children and how they should affect the guidelines. . . . The Commission could not find a simplified but workable process for dealing with this issue. The variables were so great that the Commission felt it was best addressed in a deviation. . . . The Commission was unanimous, however, in agreeing that under no conditions should this deviation be used for the purposes of reducing an existing award. A parent would certainly be aware of this obligation when entering into a new family or marriage relationship, and the children of the first marriage should not be adversely affected.

*South Dakota Child Support Commission* December 1988 Report, at 13. SDCL 25-7-6.10(5) codified this concern.[2] But the concern of "knowingly" incurring additional obligations does not apply to Meyerink. There is no evidence that Meyerink's current wife's medical condition was known at the time of their marriage.

*Conclusion*

[¶18.] Meyerink pays a substantial portion of his income in fulfillment of his responsibility to his children. It appears that the downward deviation was allowed to provide Meyerink the financial ability to work and to continue to provide for his children. The referee and circuit court found that without the requested deviation, Meyerink could not meet his financial obligations. Although SDCL 25-7-6.10(2) is to be applied cautiously and only in rare cases, the language of the statute contemplates Meyerink's situation. The referee and circuit court did not abuse their

---

2. SDCL 25-7-6.10(5) provides:

> Deviation from the schedule in § 25-7-6.2 shall be considered if raised by either party and made only upon the entry of specific findings based upon any of the following factors: . . . (5) The obligation of either parent to provide for subsequent natural children, adopted children, or stepchildren. However, an existing support order may not be modified solely for this reason[.]

discretion in granting Meyerink a downward deviation based on his financial condition. The order of the circuit court affirming the referee's recommendation is affirmed. Meyerink's motion for appellate attorney's fees is denied.

[¶19.] Affirmed.

[¶20.] GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.